IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Kimberly A. Legette | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Civil Action No.: 2:12-cv-1020-PMD |
| v. | ) |
| | ) |
| Nucor Corporation d/b/a Nucor Steel | ) |
| Berkley, and Griffin F. Daughtridge | )     **ORDER** |
| in his individual and official capacities, | ) |
| | ) |
|     Defendants. | ) |
| _____ | ) |

This matter is before the Court upon Plaintiff Kimberly A. Legette's ("Plaintiff" or "Legette") Motion to Remand pursuant to 28 U.S.C. § 1447(c). For the following reasons, the Court grants Plaintiff's Motion to Remand.

### BACKGROUND

Plaintiff was hired by Defendant Nucor Steel Berkley ("Nucor") in 1998, and at the time of her termination on April 22, 2010 was a cold mill scheduler. Second Am. Compl. ¶ 5. In her Complaint, Plaintiff alleges that Nucor drug tested her on February 25, 2010. Second Am. Compl. ¶ 9. On March 5, 2010, she was informed that she had tested positive for THC metabolite. Second Am. Compl. ¶ 16. However, upon retest by Nucor and an additional test Plaintiff had conducted offsite, she tested negative. Second Am. Compl. ¶ 19-24. Nucur tested Plaintiff again on April 6, 2010 and informed her that she tested positive again. Second Am. Compl. ¶ 27-29. On April 15, 2010, she requested another retest, reported to the safety officer for the retest, submitted the hair samples, but was instructed "that she would need to leave her car at work and be driven home,[Nucor's] stated reason being that she was under the influence of drugs." Second Am. Compl. ¶ 30-32. The results of that test came back on April 21, 2010 and

"stated that she tested positive for THC metabolite, even though the results was (sic) well below the standard cutoff levels. . . ." Second Am. Compl. ¶ 44. Nucor terminated her from her position and told her that "she was being terminated for a positive drug test." Second Am. Compl. ¶ 45.

Plaintiff claims that the positive tests were false positives and asserts the following seven causes of action against Nucor: (1) Slander and Slander *per se*; (2) Breach of Contract – Handbook and Breach of the Covenant of Good Faith and Fair Dealing; (3) Promissory Estoppel; (4) Negligence and Gross Negligence; (5) Interference with Prospective Contractual Relations; (6) Intentional Infliction of Emotional Distress; (7) Negligent Supervision. She asserts all of the above causes of action against all Defendants except for (2) Breach of Contract – Handbook and Breach of the Covenant of Good Faith and Fair Dealing, which is alleged as to Defendant Nucor only.

## STANDARD OF REVIEW

The burden of demonstrating jurisdiction resides with "the party seeking removal." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (citing *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir. 1994)). The Court is obliged to construe removal jurisdiction strictly because of the "significant federalism concerns" implicated. *Id.* Section 1447(c) of the United States Code provides that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Therefore, "[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary." *Dixon*, 369 F.3d at 816.

## ANALYSIS

I.      **Plaintiff's Motion to Remand**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the

district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  In this case, Defendants allege that removal was proper because the district court had jurisdiction to hear Plaintiff's case under 28 U.S.C. § 1332.  Under that statutory provision, federal district courts have jurisdiction over a case if the case involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  The complete diversity rule of § 1332 requires that the citizenship of each plaintiff be different from the citizenship of each defendant.  *See e.g. Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999).  Plaintiff and Griffin F. Daughtridge ("Daughtridge") are both South Carolina residents. However, Nucor contends that Daughtridge is fraudulently joined, and, therefore, that removal was proper.

"To show fraudulent joinder, the removing party must demonstrate either (1) outright fraud in the plaintiff's pleading of jurisdictional facts or (2) that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (internal quotation marks omitted).  "The party alleging fraudulent joinder bears a heavy burden-it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Id.*  "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Id.*  The plaintiff need not establish that he will ultimately succeed on his claims; "[t]here need be only a slight possibility of a right to relief." *Id.* at 425.  In order to determine whether a pleading is fraudulent, the Court is not bound by the allegations of the pleadings, but instead it may consider the entire record and may resolve the issue by any means available.  *AIDS Counseling & Testing Ctrs. v. Gr. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990).

Defendants do not assert outright fraud in Plaintiff's pleading of jurisdictional facts, but rather argue that Plaintiff could not possibility establish a cause of action against Daughtridge in state court, so joining him to defeat jurisdiction was fraudulent.

The first cause of action the complaint alleges against Daughtridge is Defamation. "In order to prove defamation, the complaining party must show: (1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm." *Fleming v. Rose*, 567 S.E. 2d 857, 860 (2002) (citation omitted); *see also Murray v. Holnam, Inc.,* 542 S.E.2d 743, 748 (S.C. Ct. App. 2001) (citation omitted).

Plaintiff has alleged that Daughtridge published to third parties a false and defamatory statement about him, the statement was not privileged, and that the statement was actionable irrespective of harm.[1]  The alleged defamation occurred through the publication that Plaintiff was unfit to perform her job, an action which "ha[s] defamatory meanings, [was] false, published to third parties, pertained to Plaintiff and resulted in legally presumed and special damages." Second Amend. Compl. at ¶ 68.  Specifically, Plaintiff has alleged that by requiring her to be driven home by a coworker and followed home by her manager, Defendants published to her co-workers that Plaintiff was being accused of illegal drug use. *See* Second Amend. Compl. at ¶ 38. Plaintiff has further alleged that her suspension and subsequent termination following the drug test was publication to her fellow employees that the Plaintiff had been using illegal drugs. *See*

---

[1] Slander is actionable *per se* when the defendant's alleged defamatory statements charge the plaintiff with one of five types of acts or characteristics: (1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession. *Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 502 (1998).

Second Amend. Compl. at ¶ 55, 56.  Plaintiff additionally alleges that this information was published to third parties with malice.  Second Amend. Compl. at ¶ 58 ("By insinuation and inference, the Defendants' above actions resulted in publication to third parties of false information about the Plaintiff which was given with reckless disregard of Plaintiff's rights, given with malice, and is not privileged.").

These allegations are sufficient for the Court to find that Daughtridge was not fraudulently joined.  *See McFadden v. The Pantry, Inc. et al.*, CA No.:2:03-2702-12 (D.S.C. Nov. 11, 2003) (J. Houck) (holding that defendants in that case did not meet the heavy burden of proving fraudulent joinder when the complaint plainly alleged a defamation cause of action against the non-diverse defendant).

Defendants argue that even if Plaintiff has alleged a defamation cause of action, Daughtridge was fraudulently joined because a qualified privilege protects Daughtridge from any suit regarding the alleged communications.  Generally, "[c]ommunications between officers and employees of a corporation are qualifiedly privileged if made in good faith and in the usual course of business." *Murray*, 542 S.E.2d  at 749 (citing *Conwell v. Spur Oil Co.*, 125 S.E.2d 270 (1962).  However, "[t]he privilege does not protect any unnecessary defamation."  *Id.* (citing *Fulton v. Atlantic Coast Line R.R.*, 67 S.E.2d 425 (1951)). "Where the speaker exceeds his privilege and the communication complained of goes beyond what the occasion demands that he should publish, and is unnecessarily defamatory of the plaintiff, he will not be protected." *Id*. Even assuming a qualified privilege applies to all of the alleged statements, Plaintiff has alleged that the statements were made with reckless disregard and malice.

In addition to qualified privilege, Defendants also argue that the at-will employment doctrine precludes the defamation claim against Daughtridge.[2]  Under the at-will employment doctrine an "at-will employee may be terminated at any time for any reason or for no reason, with or without cause."  *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 636 (S.C. 2011) (citing *Mathis v. Brown & Brown of S.C., Inc.*, 698 S.E.2d 773, 778 (2010)).

Defendants cite *Exxon Mobil Corp. v. Hines*, 252 S.W. 3d 496 (Ct. App. Tx. 2008) as support of their claim that the at-will employment doctrine bars claims for defamation.  In that case, the court held "that a terminated employee may not recover damages resulting from employment termination simply because the reason for the termination (even if defamatory) may have been internally communicated within the employing company." *Id.* at 503.   However, it went on to clarify that its holding does not preclude defamation suits by a former employee against the employer if their specific facts and damages were not limited to those that are part of a wrongful termination cause of action:

> Our holding should not be construed as suggesting that an employer can never defame an employee in Texas or that an employee can never recover defamation damages from his or her employer (whether the defamation was communicated only internally or also externally); it merely means that an employee cannot recover as defamation damages those damages caused by employment termination.

*Id.  Hines* is not binding on South Carolina state court, and even if it were followed by the state, Plaintiff has arguably alleged at least some damages that may not be covered by its holding.

Therefore**,** after resolving all issues of law and fact in Plaintiff's favor, the Court finds that Defendants have failed to carry its heavy burden to show fraudulent joinder; it cannot be said that either the qualified immunity or at-will employment doctrine preclude the possibility that the Plaintiff would be able to establish a defamation cause of action against Daughtridge in

---

[2] Defendants argue that the at-will employment doctrine applies to preclude all of the causes of action against Daughtridge.  *See* Defs.' Res. to Pl.'s Mot. to Remand, at 3-6.

state court.  Having determined remand is appropriate based on the defamation cause of action, the Court declines to comment on the merits of Plaintiff's other claims against Daughtridge.

## II. Plaintiff's Request for Attorney Fees

Plaintiff has requested that this Court award him attorney fees due to Defendants' allegedly fraudulent and frivolous removal of this matter to federal court.  "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  Whether or not to award attorney fees under this section is left to the sound discretion of the court.  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).  There is a presumption neither in favor of nor against the awarding of attorney fees under 1447(c).  *Id.* at 136.  "[T]he standard for awarding fees should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  *Id.* at 141.  *See also In re Lowe*, 102 F.3d 731, 733 (4th Cir. 1996) (holding that awarding attorney fees and costs was appropriate under § 1447(c) where "'a cursory examination . . . would have revealed' a lack of federal jurisdiction") (citation omitted); *Clipper Air Cargo, Inc. v. Aviation Products Intern., Inc.,* 981 F. Supp. 956, 960 (D.S.C. 1997) (holding that awarding attorney fees and costs is appropriate under § 1447(c) where removal is "frivolous").

While the Court has ultimately concluded that it lacks jurisdiction to hear the case, there is no evidence that Defendants were acting in bad faith or attempting to harass or delay when they removed this matter.  Defendants made several reasonable legal arguments as to why Defendant Daughtridge was not a legitimate party to this case, and if Defendants believed that they had a reasonable opportunity to prevail on such a claim and keep the case in federal court,

7

they will not be punished for attempting to do so. Because the removal was based upon a reasonable legal argument and not so obviously frivolous as to constitute an abuse of the court system, the Court denies Plaintiff's request for attorney fees.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** that Plaintiff's Motion to Remand be **GRANTED**. The Court further **ORDERS** that Plaintiff's request for attorney's fees be **DENIED**.

AND IT IS SO ORDERED.

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**July 25, 2012**